# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Austin Cadeaux,

       Plaintiff

v.

Las Vegas Metropolitan Police Department
and Joshua Byington,

       Defendants

Case No.: 2:19-cv-01584-JAD-VCF

**Order Denying Plaintiff's Motion for Summary Judgment, Granting in Part Defendants' Motions for Summary Judgment, and Closing Case**

[ECF Nos. 64, 82, 83]

Pro se plaintiff Austin Cadeaux brings this excessive-force and negligence suit against the Las Vegas Metropolitan Police Department (Metro) and one of its officers, Joshua Byington. The suit arises out of Byington's non-fatal shooting of Cadeaux after he backed a stolen U-Haul truck into Byington's patrol car and then struck a second police vehicle before leading officers on a meth-fueled, high-speed chase through Las Vegas's convention corridor—all to avoid arrest. Cadeaux and both defendants cross-move for summary judgment on all claims. Because I find that Byington is entitled to qualified immunity and Cadeaux cannot support his supervisor-liability claim against Metro, I deny Cadeaux's motion on the excessive-force claims and grant the defendants'. And because no federal claim remains to anchor this case in federal court, I decline to exercise supplemental jurisdiction over Cadeaux's remaining state-law negligence claims, dismiss them without prejudice to his ability to refile them in state court, and close this case.

**Background**

On the evening of August 8, 2019, Cadeaux parked a rented U-Haul pickup truck outside the Speedee Mart on Paradise Road[1]—a main thoroughfare in Las Vegas, Nevada—and entered the store to "get a cup of ice or something."[2]  He had smoked methamphetamine that night.[3]  Meanwhile, Metro officers Byington and Piekarski were patrolling the area and spotted Cadeaux's vehicle.[4]  Four days earlier, the officers had made an unsuccessful attempt to pull over a U-Haul truck of the same model and color, but the driver—later confirmed to be Cadeaux[5]—fled the scene and the officers did not pursue him.[6]  When Cadeaux exited the Speedee Mart and returned to his truck, Byington and Piekarski decided to stop him for questioning and began to drive towards the Speedee Mart parking lot.[7]  At the same time, officers Newbold and Kobza were driving past the Speedee Mart, observed Cadeaux entering his vehicle, and matched him to the suspect description from the August 4th incident.[8]  Newbold and Kobza then turned around and drove back towards the Speedee Mart.[9]

Once Byington and Piekarski entered the Speedee Mart parking lot, they positioned their patrol car directly behind Cadeaux's truck, activated their emergency lights, and exited their

[1] ECF No. 64 at 4–8 (amended complaint); ECF No. 82-1 (critical-incident-review-team report).

[2] ECF No. 82-4 at 37 (Cadeaux's deposition).

[3] *Id.* at 20.

[4] ECF No. 82-1 at 14–15.

[5] *Id.* at 13; ECF No. 82-4 at 30–31.

[6] ECF No. 82-1 at 13.

[7] *Id.* at 21.

[8] *Id.* at 21–22.

[9] *Id.*

2

vehicle.[10]   Cadeaux suddenly reversed his truck, striking the front bumper of the patrol car.[11]

Piekarski was pushed backwards by his open car door, and Byington ran towards the side of

Cadeaux's vehicle, drew his weapon, and gave multiple verbal commands to "get out of the

car."[12]   In his deposition, Cadeaux states that he "heard a voice, but [he] didn't hear exactly what

[Byington] was saying," but that Cadeaux was "pretty sure it was something along those lines,

'stop your vehicle' or 'get out of the vehicle.'"[13]   At the same time, Newbold and Kobza arrived

on the scene, moving southbound in the northbound lane of Paradise Road in front of the

Speedee Mart.[14]   Cadeaux, "in a[n] attempt to evade officers['] arrest,"[15] drove forward "over the

curb and sidewalk on to the northbound" lanes of Paradise Road, and struck the front bumper of

Newbold and Kobza's police car with the side of his truck.[16]   The Speedee Mart security footage

shows that, as a result of Cadeaux's driving over the curb, at least one pedestrian had to move

quickly out of the way.[17]

        After witnessing Cadeaux strike Newbold and Kobza's patrol car, Byington immediately

began discharging his firearm at Cadeaux, who maneuvered the U-Haul truck around the

officers' vehicle and then drove rapidly northbound on Paradise Road.[18]   Byington fired 13

---

[10] ECF No. 82-5 (Speedee Mart recording at 0:01:12).

[11] *Id.* at 0:01:16.

[12] *Id.*; ECF No. 82-1 at 26.

[13] ECF No. 82-4 at 40–41.

[14] ECF No. 82-1 at 27; ECF No. 82-5 at 0:01:19.

[15] ECF No. 54 at 3.

[16] ECF No. 82-1 at 27; ECF No. 82-4 at 42–43; ECF No. 82-5 at 0:01:21.

[17] ECF No. 82-5 at 0:01:20.

[18] *Id.* at 0:01:24; ECF No. 82-1 at 29.

rounds at Cadeaux as he fled, with one shot wounding Cadeaux in his upper right back.[19]

Byington then returned to his patrol car, and all four officers began to pursue Cadeaux.[20]  After

speeding through multiple intersections, Cadeaux "rammed two civilian vehicles stopped at the

red light . . . with enough force to travel north through the intersection."[21]  As a result of that

impact, Cadeaux's truck was disabled, so he exited the vehicle and fled on foot briefly before

being apprehended.[22]  He was administered first aid and then placed under arrest.[23]

Cadeaux survived the shooting and filed this lawsuit for excessive force and negligence

in federal court based on federal-question jurisdiction.[24]  He initially named four officers and

Metro as defendants,[25] but the claims against all officers but Byington were dismissed on

Cadeaux's own motions.[26]  All parties now move for summary judgment on the remaining

excessive-force and negligence claims.[27]  Cadeaux argues that Byington violated his Fourth

Amendment rights by using excessive force to prevent his escape and that Metro is liable for that

violation and for the negligent training of Byington, whose acts violated Metro's policy.

Byington contends that he is shielded from this suit by qualified immunity, and Metro argues that

---

[19] ECF No 82-1 at 11, 29.

[20] *Id.* at 39.

[21] *Id.* at 56.

[22] *Id.*

[23] *Id.*; ECF No. 82-6 (Officer Larson's body-camera footage at 0:01:20).

[24] ECF No. 54.

[25] ECF No. 82-1 at 42–46; ECF No. 82-6.

[26] ECF No. 75; ECF No. 79; ECF No. 81.

[27] Defendants also argue that Cadeaux's motion is premature because they had not yet deposed Cadeaux, who agreed to extend discovery to do so.  ECF No. 68 at 7–8.  But defendants never submitted the declaration required by Federal Rule of Civil Procedure 56(d) to demonstrate that they were unable to present essential facts in opposition to Cadeaux's motion.  And even if they had, defendants successfully deposed Cadeaux on June 15, 2022, mooting this argument.

Cadeaux's inability to show that Byington used excessive force or that his conduct resulted from a Metro policy entitles it to judgment as a matter of law.

**Discussion**

## I.   Summary-judgment standard

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[28]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[29]  If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[30]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), he "must come forward with evidence [that] would entitle [him] to a directed verdict if the evidence went uncontroverted at trial."[31]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to his case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[32]  When instead the opposing party would have the burden of proof on a dispositive issue at trial,

---

[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[29] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[30] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[31] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

[32] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).

the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[33]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[34]  "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both  motions before ruling on each of them."[35]

## II.   Byington is entitled to qualified immunity from Cadeaux's excessive-force claim.

Cadeaux contends that Byington's use of his firearm constituted excessive force because Cadeaux "was not an imminent threat nor were officers in fear of imminent death at the time," and the shooting of an "unarmed, non-dangerous person in an attempt to stop [him] from fleeing or evading" is a violation of the Fourth Amendment.[36]  Byington responds that his use of force was reasonable because Cadeaux "simply ignored [Byington's verbal] commands,"[37] "hit two police vehicles with his car and attempted to flee,"[38] and admitted that he posed an immediate

---

[33] *See, e.g., Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[34] *Celotex*, 477 U.S. at 322.

[35] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[36] ECF No. 64 at 2 (cleaned up).

[37] ECF No. 82 at 25 (Byington's summary-judgment motion).

[38] *Id.* at 22.

threat to the officers by ultimately pleading guilty to assault on a police officer with a deadly weapon.[39]

**A.      Evaluating an officer's entitlement to qualified immunity**

Qualified immunity protects government officials "from money damages unless a plaintiff pleads facts showing that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct."[40]  Courts "have discretion to choose which qualified-immunity prong to address first" and, depending on the conclusion reached for the first-analyzed prong, "need not address the other."[41]  I start with the first prong: whether Byington violated a constitutional right.

**B.      The record establishes that Byington did not violate Cadeaux's constitutional right against excessive force under Ninth Circuit law.**

Force is excessive and violates the Fourth Amendment "when it is greater than is reasonable under the circumstances."[42]  Courts in the Ninth Circuit "approach an excessive[-]force claim in three stages."[43]  First, courts "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force

---

[39] *Id.* at 24.

[40] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[41] *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (departing from the mandate in *Saucier v. Katz*, 533 U.S. 194, 207 (2001), that the first question must be resolved first)).

[42] *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

[43] *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018).

inflicted."[44]   They then evaluate the government's interest in the use of force.[45]   Finally, courts

"balance the gravity of the intrusion on the individual against the government's need for that

intrusion."[46]

### 1.   *Governmental interest in the use of force*

Because it is undisputed that Byington used deadly force when he shot Cadeaux, the

severity level is undisputedly high, so I begin with an analysis of the governmental interests at

stake.[47]   The governmental interest in the use of force is assessed "by examining [the] three core

factors" established by the Supreme Court's opinion in *Graham v. Connor*, which are "the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight."[48]   "[T]he most important" of these factors "is whether the suspect posed an immediate

threat to the safety of the officers or others."[49]   The *Graham* factors "are not exclusive," and

courts must "examine the totality of the circumstances and consider 'whatever specific factors

may be appropriate in a particular case, whether or not listed in *Graham*.'"[50]   For example,

---

[44] *Id.* (quoting *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)).

[45] *Id.*

[46] *Id.* (quoting *Espinosa*, 598 F.3d at 537).

[47] *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1031 (9th Cir. 2018) (finding that when the type and amount of force are undisputed, "the issue is determining whether the governmental interests at stake were sufficient to justify it"); ECF No. 82-1 at 29.

[48] *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[49] *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (cleaned up).

[50] *Id.* (citing *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

1  courts in the Ninth Circuit have also considered "the availability of alternative methods of

2  capturing or detaining the suspect."[51]

3                   ***a.***        ***Cadeaux's crime was severe.***

4        When weighing the first *Graham* factor, courts in the Ninth Circuit examine whether the

5  plaintiff's offense was "inherently dangerous or violent," generally concluding that "[w]hile the

6  commission of a misdemeanor offense is not to be taken lightly, it militates against finding the

7  force used to effect an arrest reasonable where the suspect was also nonviolent and posed no

8  threat to the safety of the officers or others."[52]  Cadeaux pled guilty to felony assault on a police

9  officer with a deadly weapon for hitting the two patrol cars with his truck.[53]  Cadeaux counters

10  that he has a pending habeas corpus petition to unwind that plea.[54]  Even if Cadeaux had not

11  entered this plea, the fact that these circumstances qualify as a felony offense evinces the

12  seriousness of the offense.  Regardless, the use of a vehicle as a battering ram against officers

13  and their patrol vehicles to evade a stop is inherently dangerous conduct.  So I find that the first

14  *Graham* factor weighs in Byington's favor.

15                   ***b.***        ***Cadeaux posed a danger to officers and the public.***

16        The second and most important *Graham* factor is whether the plaintiff posed a threat to

17  the safety of officers or members of the public.  "The 'reasonableness' of a particular use of

18  force must be judged from the perspective of a reasonable officer on the scene, rather than with

19

20

21  _____

22  [51] *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (internal citations omitted).

    [52] *Bryan*, 630 F.3d at 828–29 (cleaned up).

23  [53] ECF No. 82 at 24; ECF No. 82-8 at 2 (Cadeaux's guilty-plea agreement).

    [54] ECF No. 86 (Cadeaux's opposition) at 3.

the 20/20 vision of hindsight."[55]  A "simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."[56]

Byington maintains that he fired shots in order to protect other officers, pedestrians, and motorists on Paradise Road.[57]  In his interview with Metro's critical-incident-review team (CIRT), Byington stated:

> [Cadeaux] just tried to ram us, he just probably attempted to kill officer Newbold and them, I don't know what their condition was . . . Paradise [has] a very high traffic of pedestrians walking from the convention to their hotels and people comin' off the strip and vehicle traffic . . . . There was no doubt in my mind . . . if I did not stop him as a threat at that point, there was gonna be people dead on . . . either Las Vegas Boulevard or other cops that try to stop him or anything like that.[58]

The Speedee Mart surveillance video supports Byington's account.  And the record as a whole shows without genuine dispute that Cadeaux ignored Byington's verbal commands to get out of his vehicle after backing into the officers' patrol car and then drove forward into another police car before speeding away, posing an objectively dangerous threat to officers and the public.[59]

When Byington fired his first shot, Cadeaux had just struck Newbold and Kobza's car, so Byington states that he believed the officers "were in imminent jeopardy."[60]  Though he did not know their actual condition and recognizes that, at the time of the shooting, he held the mistaken belief that Cadeaux's truck hit the driver-side door of Newbold and Kobza's vehicle rather than

---

[55] *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

[56] *Mattos*, 661 F.3d at 441–42 (quoting *Deorle*, 272 F.3d at 1281).

[57] ECF No. 82 at 24.

[58] ECF No. 82-1 at 29.

[59] ECF No. 82-5 at 0:01:12–28.

[60] ECF No. 82-1 at 32.

just the front bumper,[61] Byington reasonably believed that the officers could have been seriously injured by the impact and would continue to be in jeopardy immediately after.  And Byington's belief that Cadeaux hit the side of the car rather than just the front bumper is reasonable given his obscured view.  The Speedee Mart recording depicts Byington running several feet behind the driver's side of Cadeaux's truck, blocking his direct view of the impact between the truck and Newbold and Kobza's patrol car.[62]

Even if all the officers were "in fact out of harm's way by the time of the shooting," Byington would still be reasonable in responding with deadly force as long as he perceived Cadeaux to pose an imminent threat to the officers' or others safety under clearly established Ninth Circuit law.[63]  In *Wilkinson v. Torres*, the Ninth Circuit found that an officer was entitled to qualified immunity because his use of deadly force was reasonable when he shot eleven rounds from his firearm at a suspect driving a stolen minivan near a fellow officer.[64]  The minivan driver "had failed to yield to police sirens as well as to direct commands to put his hands up and to stop the vehicle" before accelerating near an officer who was "either lying fallen on the ground or standing but disoriented."  The *Wilkinson* court found that "a reasonable officer had probable cause to believe that the threat to safety justified the use of deadly force."[65]

Cadeaux similarly ignored Byington's commands to stop his vehicle before he struck two police cars.[66]  And just as the suspect in *Wilkinson* was alleged to have knocked over and

---

[61] *Id.* at 28.

[62] ECF No. 82-5 at 0:01:22.

[63] *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (holding that the court "must view the facts from [the officer's] perspective at the time he decided to fire").

[64] *Id.* at 548–49.

[65] *Id.* at 551.

[66] ECF No. 82-4 at 40–41.

1 disoriented a police officer, posing a danger to that officer's safety, Cadeaux knocked over

2 Piekarski when he reversed his truck into the first police vehicle and then rammed into another

3 patrol vehicle, disorienting and endangering those officers.[67]  So, under established Ninth Circuit

4 law, it was "not constitutionally unreasonable to prevent [Cadeaux's] escape using deadly force"

5 because Byington "had probable cause to believe that [Cadeaux] pose[d] a threat of serious

6 physical harm" to the officers.[68]

7       Cadeaux characterizes both impacts with the patrol cars as "accidental contact" because,

8 had he intended to use his vehicle as a weapon, "he could [have] continued to ram [the officers']

9 vehicles in an attempt to cause damage."[69]  But even that characterization does not change the

10 conclusion that Byington acted reasonably when he discharged his firearm.  That Cadeaux did

11 not inflict as much damage as he otherwise could have does not negate the fact that he posed a

12 danger to Byington and Piekarski when he backed into their vehicle, and to Newbold and Kobza

13 when he drove forward into theirs.  Cadeaux also insists that the Speedee Mart surveillance video

14 "clearly shows [him] trying to avoid contact with [Newbold and Kobza's] patrol car by turning

15 his vehicle away from [the] officers['] direction."[70]  But even construed in the light most

16 favorable to Cadeaux, the footage does not support his characterization.  His vehicle makes no

17 turns and instead drives forward over the curb and towards the officers' patrol car.[71]

18

19

20 [67] *Id.* at 27–28.

[68] *Wilkinson*, 610 F.3d at 550.

21 [69] ECF No. 71 at 2.

22 [70] ECF No. 86 at 1.

23 [71] ECF No. 82-5 at 0:01:22; *see Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that courts should rely on video evidence, when possible, to determine reasonableness in excessive-force cases).

Cadeaux next suggests that even if Byington's first few shots were reasonable because of officer danger, the force became excessive when Byington continued to fire after Cadeaux moved beyond the officers' vehicles.[72] But the Ninth Circuit in *Wilkinson* refused to require officers to reevaluate whether a deadly threat had been eliminated after each shot, holding that such a rule would "place[] additional risk on the officer not required by the Constitution."[73]

Byington also maintains that he continued firing as Cadeaux drove around Newbold and Kobza's car because he believed that the public was in imminent jeopardy, as Cadeaux would "be a threat to any person on the roadway."[74] Cadeaux counters that Byington did not have a reasonable belief that he posed a harm to nearby pedestrians, pointing to Byington's statement in his CIRT interview that he did not see any pedestrians in the area[75] or any cars on Paradise Road for at least 300 yards.[76] But Byington also understood Paradise Road to have "a very high traffic of pedestrians walking from the convention to their hotels and people comin[g] off the strip and vehicle traffic."[77] And the Speedee Mart surveillance footage shows at least one pedestrian who appears to have moved out of the way to avoid getting hit by Cadeaux's vehicle.[78] So I find that the second *Graham* factor weighs in favor of Byington.

---

[72] ECF No. 71 at 1–3.

[73] *Wilkinson*, 610 F.3d at 552 ("the firing of multiple shots 'does not suggest the officers shot mindlessly as much as it indicates that they sought to ensure the elimination of a deadly threat'" (quoting *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996))).

[74] ECF No. 82-1 at 31.

[75] ECF No. 86 at 6 ("I didn't even know there was a pedestrian on the sidewalk right there").

[76] *Id.* at 5 ("I didn't see anything for 300 yards. There [were] no cars on Paradise or anything").

[77] ECF No. 82-1 at 29.

[78] ECF No. 82-5 at 0:01:18. I also find merit in Byington's reasoning that Cadeaux demonstrated "two separate times that he's willing to attempt to batter with . . . a deadly weapon . . . [so] if he continues to drive . . . he's [going to] be a threat to any person on the roadway." *See Scott v. Harris*, 550 U.S. 372, 385 (2007) (holding that "a police officer's attempt to terminate a

1          c.      *Cadeaux admits to resisting arrest and fleeing.*

2          The third and final *Graham* factor considers whether the plaintiff was actively resisting

3   arrest or attempting to flee.  All parties agree, and surveillance video of the incident supports,

4   that Cadeaux was attempting to flee from the scene when he struck both police cars and drove

5   away.  Cadeaux admits in his amended complaint that he was "attempt[ing] to evade officers[']

6   arrest"[79] and conceded in his deposition that he was "trying to get away from officers'

7   apprehension."[80]  Because Cadeaux actively resisted arrest[81] and fled the scene, the third

8   *Graham* factor weighs heavily in Byington's favor.

9          **2.      Balancing the competing interests**

10          Having found that all three *Graham* factors weigh in favor of Byington, I turn to the final

11  step of the excessive-force analysis, which is to "balance the gravity of the intrusion on the

12  individual against the government's need for that intrusion."[82]  The government had a strong

13  interest in using deadly force against Cadeaux because of the dangerous threat he posed to the

14  officers and the public when he committed the serious act of ramming two police officers with

15  his stolen U-Haul truck before driving away at a rapid speed.  I therefore conclude that, under the

16  totality of these circumstances, Byington's use of deadly force to protect other officers and the

17  public was not excessive when balanced against the government's need for such force.

18

19  ──────────────
    dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate
20  the Fourth Amendment").

    [79] ECF No. 54 at 3.
21
    [80] ECF No. 82-4 at 27.

22  [81] *See Mattos*, 661 F.3d at 450 (distinguishing "failure to facilitate the arrest" and "active
    resistance to arrest" but concluding that the crux of the third *Graham* factor is refusal to comply
23  with officers' requests).

    [82] *Thompson*, 885 F.3d at 586 (quoting *Espinosa*, 598 F.3d at 537).

14

1   Cadeaux also asks me to consider the availability of alternative methods of capturing or

2   detaining him.[83]  "Officers need not avail themselves of the least intrusive means of responding

3   to an exigent situation; they only need to act within the range of conduct we identify as

4   reasonable."[84]  But "police are required to consider what other tactics if any were available, and

5   if there were clear, reasonable and less intrusive alternatives to the force employed . . . ."[85]

6   Cadeaux argues that Byington should have used the "least amount of force possible to apprehend

7   [him] such as a road block or shooting tires to try to disable [Cadeaux's] vehicle."[86]  Byington

8   points out that he had attempted to use less-lethal options in the form of verbal commands, which

9   Cadeaux ignored.[87]  Though I consider the availability of less-lethal methods in my balancing

10  analysis, Ninth Circuit law holds that a plaintiff cannot "establish a Fourth Amendment violation

11  based merely on bad tactics that result in a deadly confrontation" or a use of deadly force "that

12  could have been avoided."[88]  And, at this stage, I am skeptical that Cadeaux's suggested

13  alternative methods of apprehension were available given the rapidly escalating nature of his

14  encounter with officers, which lasted only about 15 seconds.[89]

15      This case is also distinguishable from those in which the Ninth Circuit found the

16  availability of less-lethal methods to be important in the balancing analysis.  For instance, in *S.R.*

17

18

---

[83] *Luchtel*, 623 F.3d at 980.

[84] *Glenn v. Washington Cty.*, 673 F.3d 864, 876 (9th Cir. 2011) (quoting *Scott v. Henrich*, 39 F.3d 912, 914–15 (9th Cir. 1994)) (internal quotation marks omitted).

[85] *Id.* (quoting *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010)) (cleaned up).

[86] ECF No. 71 at 2; *see also* ECF No. 86 at 3.

[87] ECF No. 88 at 3 (Byington's reply).

[88] *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002), abrogated on other grounds by *Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420 (2017).

[89] ECF No. 82-5 at 0:01:12–28.

1   *Hehad v. Browder*, the officer had readily-available alternatives because he was carrying a taser,

2   mace, and a collapsible baton in addition to his firearm, and it was undisputed that the suspect

3   was within the taser's effective range.[90]  In *Bryan v. MacPherson*, the court found that the

4   officer's force was excessive because he had "clear, reasonable, and less intrusive alternatives"

5   given that backup was on the way and the suspect "never attempted to flee[,] . . . was clearly

6   unarmed and was standing, without advancing in any direction, next to his vehicle."[91]  But here,

7   the alternatives that Cadeaux proposes were not clear or reasonable to the officers, given that

8   Cadeaux—who had successfully evaded capture four days earlier—was actively fleeing the

9   scene in a stolen car that he had just used as a weapon against those officers.  There is also

10  nothing to suggest that officers were equipped to rapidly deploy effective roadblocks other than

11  their patrol vehicles, which Cadeaux was already surmounting.  So this additional factor does not

12  tilt the scale away from a finding that the government's interest in the immediate use of deadly

13  force outweighed the gravity of the intrusion.

14          As I find that Byington acted reasonably under the totality of the circumstances, I need

15  not reach the second prong of the qualified-immunity analysis: whether the right was clearly

16  established at the time of the challenged conduct.[92]  So because Cadeaux has not shown that

17  Byington violated his constitutional right against excessive force, qualified immunity shields

18  Byington from Cadeaux's excessive-force claim, and Byington is entitled to summary judgment

19  in his favor.[93]

20

21  [90] *S.R. Nehad v. Browder*, 929 F.3d 1125, 1138 (9th Cir. 2019).

    [91] *Bryan*, 630 F.3d at 831–32.

22  [92] *Isayeva*, 872 F.3d at 946 (citing *Pearson*, 555 U.S. at 223).

23  [93] Byington also argues that Cadeaux's excessive-force claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because Cadeaux pled guilty to assault and that plea shares a factual basis with Cadeaux's excessive-force claim.  ECF No. 82.  Cadeaux responds that he has

1   **III.     The record does not support Metro's liability for Cadeaux's excessive-force claims.**

2          Because I have concluded that the record establishes that Byington's use of force was

3   reasonable under the circumstances of this case, there is no constitutional violation for Metro to

4   be held liable for.  But even if Byington had used excessive force, Metro is entitled to summary

5   judgment on Cadeaux's § 1983 claim against it because the record does not reflect any basis for

6   municipal liability.

7          The law does not recognize respondeat superior liability for § 1983 claims, so a

8   municipal entity can only be held liable for the constitutional violations of an employee if the

9   plaintiff can show that the execution of a municipal policy or custom caused the constitutional

10  injury.[94]  "A policy can be one of action or inaction."[95]  For instance, "a local government's

11  decision not to train certain employees about their legal duty to avoid violating citizens' rights

12  may rise to the level of an official government policy for purposes of § 1983."[96]  To impose

13  liability against a municipality for its failure to act, a plaintiff must show that: (1) a municipal

14  employee violated the plaintiff's constitutional rights; (2) the municipality has customs or

15  policies that amount to deliberate indifference; [and] (3) these customs or policies caused the

16  employee's violation of the plaintiff's constitutional rights.[97]  "'[D]eliberate indifference' is a

17  stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

18

19  filed "a habeas corpus to take [the] deal back due to counsel lying to defendant on basis of [the]
    exact meaning of assault[;] still pending."  ECF No. 86 at 3.  Because I resolve Cadeaux's
20  excessive-force claim on Byington's qualified-immunity argument, I do not reach either party's
    *Heck*-bar arguments.

21  [94] *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

22  [95] *Id.* (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)).

    [96] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).
23
    [97] *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1193–94 (9th Cir. 2002), *cert. denied*, 537 U.S.
    1106 (2003).

1 consequence of his action."[98]  However, "[t]he existence of a policy, without more, is

2 insufficient to trigger local government liability under section 1983."[99]

3      Cadeaux does not contend that Byington *was executing* a Metro policy, practice, or

4 custom when he shot Cadeaux, rather that Byington's conduct *violated* Metro's use-of-force

5 policy.  He baldly theorizes that this policy violation demonstrates that Metro failed to properly

6 train Byington "for such situation[]s and . . . the employer is just as responsible as [the]

7 officer."[100]  But a single violation of municipal policy is insufficient to establish a failure to train.

8 The Supreme Court held in *City of Oklahoma City v. Tuttle* that "proof of a single incident of

9 unconstitutional activity is not sufficient to impose [municipal] liability[;] . . . the existence of

10 [an] unconstitutional policy, and its origin, must be separately proved."[101]  Because Cadeaux has

11 identified no evidence to support a viable liability theory against Metro, I deny his motion for

12 summary judgment against it and grant Metro's motion for summary judgment on Cadeaux's

13 excessive-force claim.

14

## IV. The court declines to exercise supplemental jurisdiction over Cadeaux's remaining
15 state-law claim.

16      The resolution of Cadeaux's excessive-force claims against Byington and Metro leaves

17 only his state-law claim for negligence.  Because this lawsuit was filed in federal court based on

18 federal-question jurisdiction, this court is exercising supplemental jurisdiction over these state-

19 law claims.  Federal courts are courts of limited jurisdiction, and they maintain supplemental

20

---

21 [98] *Connick*, 563 U.S. at 61.

[99] *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992).

22 [100] ECF No. 87 at 1 (Cadeaux's opposition).

23 [101] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *but see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (holding that "a municipality may be liable under § 1983 for a single decision by its properly constituted *legislative* body . . . ." (emphasis added)).

jurisdiction over state-law claims that "are so related to claims in the action" that they form the same case or controversy with the claims over which the court has jurisdiction.[102]  But once a plaintiff's federal claims are gone, the court may decline to exercise supplemental jurisdiction over the remaining state-law claims.[103]  Because I grant summary judgment in favor of Byington and Metro on Cadeaux's federal claims, I decline to exercise supplemental jurisdiction over Cadeaux's state-law negligence claims and dismiss them without prejudice to Cadeaux's ability to refile them in state court.

## Conclusion

IT IS THEREFORE ORDERED that the defendants' motions for summary judgment **[ECF No. 82 and ECF No. 83] are GRANTED in part**: summary judgment is granted in favor of Defendants Joshua Byington and the Las Vegas Metropolitan Police Department on Plaintiff Austin Cadeaux's excessive-force claim; his negligence claim is dismissed under 28 U.S.C. § 1367(c) without prejudice to his ability to refile it in state court.[104]

IT IS FURTHER ORDERED that Cadeaux's motion for summary judgment **[ECF No. 64] is DENIED**.

The **Clerk of Court** is directed to **ENTER JUDGMENT accordingly and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
December 20, 2022

---

[102] 28 U.S.C. § 1367(a).

[103] 28 U.S.C. § 1367(c)(4); *see Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("[I]t is generally preferable for a district court to remand remaining pendent claims to state court.").

[104] *See* 28 U.S.C. § 1367 (d) ("The period of limitations for any" claim that the federal court dismisses under this statute "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").